Grover, J.
One of the grounds upon which the defendants based their motion for a nonsuit was, that the action did not survive and could not be maintained against the personal representatives of Harry Hayt. The rule at common law was that actions for torts- died with the person, and could not be maintained by the personal representatives of the injured party, or against those of the wrong-doer. The statute has changed the law so far as property or relative rights are affected by the wrongful act. The Eevised Statutes [yol. 2, 448, § 1) provide that for wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrong-doer, such action may be brought by the person injured, or, after his death, by his executors or administrators against such wrong-doer, and after his death, against his executors o-r administrators, in the same manner and with the like effect, in all respects, as actions founded upon contracts. Section 2 provides that the preceding section shall not extend to actions for slander, for libel, or to actions for assault and battery or false imprisonment, nor to actions on the case for personal injuries to the person of the plaintiff or to the per *468 son of the testator or intestate of any executor or administrator. The exceptions contained in the 2d section manifest the intention of the Legislature that all other actions founded upon tort should survive.
Another ground upon which the nonsuit was asked, was that the plaintiffs were informed of Delavan’s claim at the time of- the purchase, or at least that they had sufficient notice to put them upon inquiry, and that they, therefore, purchased at their own risk. The only information possessed by the plaintiffs were the statements made by Hayt and Delavan at the time of the purchase. A party making fraudulent representations upon a sale of property by him, cannot defend himself, as matter of law, upon the ground that a bystander stated the real facts. The purchaser may rely upon the state-, ments of the vendor; and whether he does so rely and is thereby induced to purchase is a question for the jury. It did not appear that the plaintiffs had any other means of ascertaining the truth than the statements made by Hayt and Delavan at the time of the purchase. They were not, therefore, guilty.of any negligence in not ascertaining the facts.
The remaining ground for the nonsuit necessary to notice is that Hayt’s representations amounted to the expression of a mere opinion. They were much more than this. His assertions, among others, were that Delavan had no mortgage; that he had no claim-; that he came as a scarecrow to injure the sale of the farm. This is no opinion, but a positive assertion that Delavan had no claim.
The conversation between the plaintiffs and Harry Hayt, immediately after the farm was struck off and before any writings were made, was properly received in evidence. The sale was not judicial, and was, therefore, within the statute of frauds. The sale was not complete until the writings were executed. Any false and fraudulent representations, made by Hayt with a view to induce the plaintiffs to go on and consummate the bargain, were proper evidence.
There was no efror in receiving in evidence the proceedings and judgment in -the action prosecuted by Delavan against the *469 plaintiffs and Harry Hayt to enforce Ms mortgage. The judgment in that action was admissible to show the validity and amount of Delavan’s mortgage. The defendants’ testator was a party to that suit, and, therefore, concluded by the judgment. The papers necessary to constitute the judgment roll had all been filed, and the neglect of the clerk to attach them together could not affect the plaintiffs' right to use them as evidence. The judgment was regular, and the papers might have been attached upon the trial, and thus met the formal objection. The neglect to do it did not injure the defendants, or in any way affect their rights.
The question whether Hayt had any agency in preventing Delavan’s demand being provided for in the assignment, according to the agreement upon which he gave up the mortgage, was not material. The true inquiry, was whether Delavan, at the time of the sale, had a valid mortgage upon the farm, and whether Harry Hayt knew it; and whether, knowing this, he, with a view to deceive and defraud the plaintiffs, denied the existente of any such claim; and whether the plaintiffs, confiding in his representations, were thereby induced to purchase the farm, believing that there was no such claim. By what means the debt of Delavan failed to be provided for in the assignment and satisfied from the proceeds of the assigned property, did not affect any of the issues upon trial.
The defendants’ counsel requested the court to charge the jury that if they came to the conclusion that Harry Hayt, at the time of the bidding in the presence of Beverly Haight, the purchaser, publicly refused to warrant the title to the premises sold, as against Delavan’s mortgage or claim, that the purchaser is deemed to have purchased at his own risk, and the action could not be maintained. The court declined so to charge, to which the defendants’ counsel excepted. Upon what principle the refusal of Hayt to warrant against the claim of Delavan, the existence of which he denied, is to protect him, if the denial was made with a design to deceive and defraud the purchasers, is not perceived. The fact that he was acting as trustee and had no personal interest can make no difference in a legal *470 view. The action is to recover for the injury sustained by the plaintiffs from the fraud of Hayt. The injury to the plaintiffs and the wrong done by Hayt was the same, whoever received the fruits. In Culver v. Avery (7 Wend., 380) it was held that an action lay against a public officer for deceit practised by him in making a sale of land officially. In that case the defendant was one of the commissioners of loans, and in that capacity sold the land, and he was held liable for fraudulent representations in regard to the title. The refusal of Hayt to warrant against the claim, did not prove that the plaintiffs knew of or believed that it existed. The question was whether they were deceived by Hayt’s representations. If they believed that Delavan’s claim was valid, they 'were not deceived and could not recover. The refusal of Hayt to warrant was proper evidence for the consideration of the jury upon this point, but did not constitute a legal bar to the action.
The defendants’ counsel excepted to the refusal of the court to charge the jury that if they came to the conclusion, from the evidence, that Harry Hayt believed at the time of the sale that the mortgage of Delavan was given up and canceled, and was no longer an available security in Delavan’s hands at the time of said sale, then there was no sufficient evidence of fraud or deceit on the part of Harry Hayt, and they should find for the defendants. There was no evidence upon the trial that Hayt believed that the mortgage had been given up and canceled. The proof showed that he knew the terms upon which Delavan handed it to Pudney, and that he also knew that those terms had not been complied with. The lien of the mortgage was not discharged by the transaction, and the request amounts to nothing more than calling upon the jury to conjecture whether Hayt was ignorant of the law, and really believed that such a transaction would cancel the mortgage. The judge did charge the jury that they must ascertain whether Harry Hayt was guilty of fraud and false representations, and if his conduct was not calculated to mislead and deceive the plaintiffs and induce them, under such representations, to part with their money and purchase the property; that if the jury found such *471 representations were false and made with a design to deceive them, the action was made out and the plaintiffs were entitled to recover. This portion of the charge gave the true rule to the jury. By it I understand they were directed to ascertain whether the representations were false and made with a view to deceive and defraud the purchasers, and if so, whether the plaintiffs were thereby induced to purchase the property: in which case the action was made out.
The judge charged that the rule of.damages, if the plaintiffs were entitled to recover, was the difference in the value of the farm as it was represented to be and as it really was, and that was the amount of the mortgage, with the interest and costs; to which the defendants excepted. The exception is too general to raise the question whether the plaintiffs were entitled to recover the costs of the Delavan foreclosure suit. In all other respects the rule laid down by the judge was clearly right, and I think under, the facts of the case, he was right as to the costs of that suit. No question was made upon the argument in this court but that fraud and deceit upon the sale of real estate will support an action by the party injured. The law may be considered as settled upon this point, in this State. (Culver v. Avery, 7 Wend., 380; Ward v. Wiman, 17 Wend., 196; Whitney v. Allaire, 1 Comst., 305, and cases therein referred to.) There is no reason why the same rules should not prevail in this respect in regard to real, as obtain in sales of personal property. The judgment should be affirmed.
Denio, J. Upon the examination I have given to this case, I have come to the following conclusions:
1. Enough had been proved when the plaintiffs rested to entitle them to go to the jury. It may be conceded that the plaintiffs had sufficient notice, from what transpired at the sale, to put them upon inquiry as to the existence and validity of the mortgage set up by Delavan. They were informed that such a mortgage had been executed, and they knew that Delavan claimed that it was still on foot. If the question was whether they were bona fide purchasers, in a sense, which *472 would enable them to avoid the mortgage, on the ground that it had not been recorded, the decision would be against them. This must have been so adjudged in the action which Delavan prosecuted against them to foreclose that mortgage. But the existence of such notice is not an answer to the allegation that they were drawn in to make the purchase by the fraudulent representations of the defendants’ testator. It was no doubt evidence, bearing upon the question whether they purchased upon the faith of what Hayt said, or upon their own judgment, as to the probability of the mortgage being on foot. Their knowledge, at one time, of the mortgage, was notice of its existence, which would subject them to the lien if it were really on foot. But suppose Hayt had falsely represented that he had witnessed its payment in full, and they, believing him, had purchased on the faith that such payment had been made, the defendant could not have excused himself upon the position that they had sufficient notice to put them upon inquiry. Hayt could not complain that the purchasers had confided in his representations. Whether they did so confide, was a question for the jury.
It was not so clear that what Hayt said was simply the expression of an opinion, as that the judge would have been warranted in withholding the case from the jury on that assumption. He stated that there were only certain incumbrances upon the property, which did not include a mortgage to Delavan; and when Delavan claimed to have a mortgage, he denied that he had any; and when he said his mortgage had been delivered up conditionally, and upon a condition which had not been performed, Hayt still declared that he had no claim. These were allegations touching the existence or non-existence of facts. In form they were not opinions merely, and in substance they related to facts. Now if Hayt knew that Delavan’s mortgage had been obtained on the condition mentioned, and that the condition had been evaded, he knew that the mortgage was really a lien; or if he supposed that its delivery and destruction extinguished it, he was bound to disclose the facts, that the plaintiffs, who were about to deal *473 upon the supposition that there was no lien, might have the same means of judging that he had himself. His general declaration that there was no incumbrance, included a denial of what Delavan had asserted. It is certainly possible that the defendant intended only to say, and ewas understood to have said, that conceding Delavan’s statement his mortgage was discharged. If this was so, and the declaration was made in good faith, I conceive that the defendants would not be liable in this action; but it is quite as consistent" with the language used to say that he meant to deny, and was understood to deny, that Delavan’s account of the matter was true. If this was the nature of the representations, then, inasmuch as the defendant certainly knew that what Delavan pretended was substantially according to the fact, he intentionally misled the plaintiffs in a material matter, and should make good the loss which it occasioned them.
2. There was no error in allowing the declarations of the defendants’ testator, made after the premises were struck down, to be given in evidence. The purchasers had not, at that time, committed themselves by signing an agreement in writing. What had been done up to that period did not bind either party; and if the purchasers had then been informed of the existence of Delavan’s lien, they would have been at liberty to refuse to go on with the purchase, and no doubt would have refused.
3. I do not see that the existence of the suit oh the chattel mortgage could have had any influence upon the case. It is not pretended that it resulted in satisfaction to any extent of Delavan’s debt. It was not an alternative security, the existence of which would prove that the mortgage was not a lien. The proof, if given, would simply have been authentic evidence that Delavan claimed to have a concurrent remedy for the same debt. Delavan had stated this at the sale, and it had not been denied; but he considered the result of that action doubtful, and he therefore gave notice of the mortgage lien. Hayt was none the less bound to deal fairly with the purchasers respecting the mortgage, that it was possible the debt would be realized by means of a collateral security.
*474 4. I think the judge ruled correctly in excluding the evidence offered to show that Hayt was not cognizant to the alteration of the assignment, which deprived Delavan of the preference he was to have, at any time before he signed that instrument. The charge against him was not that he was an actor in the fraud or breach of agreement which was practised upon Delavan, though that fact was material as to the scienter. Before the representations were made upon which the suit was brought, Hayt" knew the fact that the agreement upon which the mortgage was given up had been violated. It does not seem to me material at what time he acquired that knowledge, if it was before he made the representations.
5. The action survived against the representatives of Hayt, the original defendant. (2 R. S., 447, §§ 1, 2.) The cause of action was “a wrong done” “to the rights and interests” of the plaintiffs. The exception in section 2 shows, if there was otherwise any doubt, that the prior section was intended to embrace this case.
6. The judge was requested to charge that if Hayt refused to give covenants of title, the action could not be sustained; and it is alleged that he fell into an error in declining to give that instruction. The policy of allowing actions for alleged fraudulent parol representations ás to the title to or incumbrances upon land sold is I think questionable. That it exposes parties to some of the evils which the statute of frauds was intended to prevent cannot be doubted. But it is too late to entertain that question, for it is now well settled that such actions will lie. ( Whitney v. Allaire, 1 Comst., 805.) If a vendor can be made liable for a defect of title, or the existence of incumbrances, where he has given no covenants, it does not seem material to inquire whether he expressly refused to give them, or whether the omission arose from any other cause. If the purchaser consents to waive the usual covenants, he is none the less entitled to the exercise of good faith and honesty on the part of the vendor. (Doggett v. Emerson, 3 Story, 700, 733; Masson v. Bovet, 1 Denio, 72.) In a case where, as upon a sale of chattels, a covenant as to title is implied, an *475 express assent of the purchaser to take the article at his own risk would rebut the usual implication of a warranty; but if the vendee’s consent was obtained by the fraudulent representations of the seller, he would, notwithstanding, be liable for the fraud. I think the ruling upon this point was entirely correct.
7. The only point respecting the charge about which I have had any doubt, is the refusal of the judge to instruct the jury that if Hayt really believed the mortgage was extinguished the plaintiffs could not recover. It seems very plausible to contend that in the case supposed the defendant could not have been guilty of fraud. But I think there is a view upon which the instruction would have been wrong. The declaration of Delavan, of the circumstances attending and following his giving up his mortgage, if true, showed that that instrument was still on foot. That being the conclusion of law, it is fair to intend that the purchasers would have forborne to purchase if they had known that the facts were as alleged. Hayt knew that they were as Delavan had stated, but the request assumes that he may have mistaken the law, as he certainly might, and have supposed that the material destruction of the mortgage deed would have extinguished the incumbrance. But, conceding this to be so, he was bound to give the purchasers the benefit of the facts as they existed, that they might judge for themselves.. If, by the denial of Delavan’s pretensions, and the assertion that he came to the auction merely “for a scarecrow to injure the sale of the farm,” he meant to dispute the truth of Delavan’s account of the transaction, as the jury were warranted in finding, he committed a fraud upon the purchasers. He willfully misrepresented the truth of the case upon a material point, and he cannot be excused upon the ground that he supposed they could still avoid the mortgage upon a legal principle. Delavan claimed that the facts stated by him would show the mortgage to be valid. If Hayt had intended to deal honestly, he should have admitted the assertion, and then he might properly enough have stated his opinion upon the point of law. If he had done so, and the *476 purchasers had elected to proceed with the purchase, they would have had no cause to complain. In other parts of the charge the judge .clearly enough instructed the jury, that there must be an intent to defraud in order to enable them, to find a verdict against the defendant. Taking the whole charge together, the meaning is, that if Hayt denied the facts which he knew— as to the circumstances attending the destruction of the mortgage—with intent to defraud the purchasers, he was liable, although he supposed the plaintiffs would be enabled to defeat it upon the 'facts as they existed.
8. It is objected that the judge said to the jury that Hayt was a party to the alteration of the assignment, by which Delavan was deprived of the preference which it was agreed he should have. He knew of the agreement, and he accepted and executed the assignment as trustee. This was what the judge referred to, and it bore out the remarkand it was not inconsistent with the ruling by which he excluded evidence, that he did not know of the change until he came to sign the deed.
I think the rule of damages given to the jury was the correct one.
Upon the facts, the case was a close and doubtful one, and it may be that the jury have dealt harshly with the defendants ; but I think no rule of law was violated on the trial
I am in favor of affirmance.
Strong, J., was of the opinion that the judge had been substantially requested to charge that if Hayt did not intend to defraud, believing the mortgage had been given up, canceled, and was no longer an available security, the defendants were not liable; and that in refusing so to charge he misled the jury, and a new trial should be ordered. Allen, J., thought that it should have been submitted to the jury, whether the declarations of Hayt were not a mere expression of opinion, and was also for a new trial. Gray, J., expressed no opinion.
Judgment affirmed.